UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROWAYTON VENTURE GROUP LLC; ROWAYTON VENTURE GROUP R, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 19-12240-FDS |
| JOHN MCCARTHY; SETH KAUFMAN; and KAUFMAN & CO., LLC, | ) ) ) | |
| Defendants. | ) ) | |
| KAUFMAN & CO., LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 19-12372-FDS |
| ROWAYTON VENTURE GROUP LLC; ROWAYTON VENTURE GROUP R, LLC; DAVID CONTE; CHARLES BAUER; and ANDREW VINEYARD, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS**

**SAYLOR, C.J.**

This is a lawsuit arising out of a contract for financial services. Rowayton Venture Group LLC ("Rowayton") and Rowayton Venture Group R, LLC ("RVG-R") have filed suit against Kaufman & Co., LLC; Seth Kaufman; and John McCarthy for fraud and breach of contract. In a separate action, Kaufman & Co. has filed suit against Rowayton, RVG-R, and three individuals, David Conte, Charles Bauer, and Andrew Vineyard, on various claims arising

out of the same events. The two matters have since been consolidated. Jurisdiction is based on diversity of citizenship.

In May 2019, Rowayton engaged Kaufman & Co. to assist them in securing financing for a business transaction. Rowayton and Kaufman & Co. executed a contract for financial advisory services, in exchange for which Kaufman and Co. would be paid certain fees and allegedly receive an equity interest in RVG-R.

In August 2019, that transaction closed. Rowayton contends that Kaufman and Co. was not helpful in financing the deal and did not perform under the contract. Accordingly, it has refused to pay any fees.

On October 30, 2019, Rowayton and RVG-R filed this action for a declaratory judgment and for damages based on alleged fraud and breach of contract. That same day, Kaufman & Co. filed its own lawsuit in Massachusetts Superior Court. That complaint asserts various claims arising out of an alleged breach of contract by Rowayton. That complaint was removed to this court, and on November 27, 2019, it was consolidated with this action.

The Kaufman parties, who are defendants in the lawsuit filed by Rowayton, have moved to dismiss the claims against them. For the following reasons, that motion will be granted in part and denied in part.

**I.      Background**

The facts are stated as set forth in the complaint.[1]

**A.      The Parties**

Rowayton Venture Group LLC is a limited liability company based in Darien,

---

[1] Because the motion to dismiss was filed by the Kaufman parties, the relevant complaint for the purposes of this motion is that filed by the Rowayton parties.

Connecticut.  (Rowayton Compl. ¶ 1).  Rowayton Venture Group R, LLC is also an LLC based in Connecticut.  (*Id.* ¶ 2).

Rowayton and RVG-R each have three members:  Andrew Vineyard, David Conte, and Charles Bauer.  (*Id.* ¶ 3).  Each is a resident of the state of Connecticut, (*Id.*).

Kaufman & Co., LLC is a limited liability company based in Boston, Massachusetts.  (*Id.* ¶ 4).  Seth Kaufman and John McCarthy are both residents of Massachusetts.  (*Id.* ¶ 6–7).  Kaufman & Co., LLC, Seth Kaufman, and John McCarthy will be referred to collectively as the "Kaufman parties."

### B. Factual Background

On May 9, 2019, Rowayton entered into an agreement with Kaufman & Co. to provide financial advisory services in connection with a forthcoming transaction.  (*Id.* ¶ 17; *see also* Compl. Ex. A, "Engagement Letter").  The substance of the planned transaction involved the purchase of certain financial assets by RVG-R from a company affiliated with General Electric.  (*Id.* ¶ 16).

Prior to executing the agreement, Seth Kaufman and McCarthy "specifically represented that they had the knowledge, experience, contacts and ability . . . to attract investors to fund the proposed business opportunity."  (Rowayton Compl. ¶ 18).  In exchange for their services, Rowayton agreed to pay Kaufman & Co. a cash fee payable at closing equal to 5% of all capital raised from outside parties and a participation fee that "references a purported equity interest." (*See id.* ¶ 32).

The Rowayton plaintiffs allege that the representations made by Seth Kaufman and McCarthy were false.  (*Id.* ¶ 21).  They only located one potential financing source, Lincolnshire Capital, which ultimately withdrew from the transaction at a late stage, allegedly due to their poor performance.  (*Id*. ¶¶ 22, 27).  They are also alleged to have demonstrated an incomplete

3

understanding of the transaction on a conference call with GE. (*Id.* ¶ 24). That alleged incompetence put the transaction at risk several times, and ultimately resulted in worse contractual terms for Rowayton. (*Id.* ¶ 25–26).

On August 30, 2019, the transaction with GE closed. (*Id.* ¶ 15). The financing was provided by Stonehenge Capital Company, LLC. (*Id.* ¶ 29). An individual named George Harrington, rather than the Kaufman parties, located Stonehenge. (*Id.* ¶¶ 29–30).

After the transaction closed, the Kaufman parties submitted an invoice for $263,292.34 in fees and out-of-pocket expenses. (*Id.* ¶ 33; Rowayton Compl. Ex. B). Rowayton has not paid the invoice. (*See id.* ¶ 34).

On October 14, 2019, Kaufman & Co. sent a demand letter to Rowayton under Mass. Gen. Laws ch. 93A. (*Id.* ¶ 38; Rowayton Compl. Ex. C). It sought fees and a 3% equity interest in RVG-R, which it alleges it is owed under the Engagement Letter. (*Id.* ¶¶ 35–36).

### C.    Procedural Background

On October 30, 2019, Kaufman & Co. filed a lawsuit in Massachusetts Superior Court. (*See* Mot. to Consol., Ex. A, Kaufman Compl.). That complaint asserted claims for breach of contract (Count 1), breach of the duty of good faith and fair dealing (Count 2), quantum merit (Count 3), unjust enrichment (Count 4), violation of Mass. Gen. Laws ch. 93A (Count 5), equitable relief (Count 6), and injunctive relief (Count 7). (*Id.*).

That same day, Rowayton and RVG-R filed a separate complaint in this court. That complaint asserts claims for a declaratory judgment (Count 1), fraud (Count 2), and breach of contract (Count 3). (Rowayton Compl. ¶¶ 41–52).

On November 19, 2019, Rowayton and RVG-R removed the state case to this court. (*See* Mot. to Consol., Ex. C., ECF 8). On November 27, 2019, that complaint was consolidated with this case.

The Kaufman parties have now moved to dismiss all claims against them under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted NS Fed. R. Civ. P. 9(b) for failure to plead fraud with particularity..

## II.     Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## II.     Analysis

### A.     Prior Pending Action

The Kaufman parties first seek dismissal of all claims against them under the prior-pending-action doctrine. Under that doctrine, "the pendency of a prior action, in a court of competent jurisdiction, between the same parties, predicated upon the same cause of action and

growing out of the same transaction, and in which identical relief is sought, constitutes good ground for abatement of the later suit." *O'Reilly v. Curtis Pub. Co.*, 31 F. Supp. 364, 364–65 (D. Mass. 1940). As a general rule, the suit filed first should have priority "absent the showing of balance of convenience in favor of the second action." *Adam v. Jacobs*, 950 F.2d 89, 93–94 (2d Cir. 1991) (internal quotation marks and citation omitted). The doctrine arises out of concerns about judicial efficiency and avoiding inconsistent judgments, and derives from a court's inherent power to control its docket. *Curcio v. Hartford Fin. Servs. Grp.*, 472 F. Supp. 2d 239, 243 (D. Conn. 2007); *Ellison Framing, Inc. v. Zurich Am. Ins. Co.*, 805 F. Supp. 2d 1006, 1012 (E.D. Cal. 2011) ("The court's authority to hear 'motions to stay and motions to dismiss because another action is pending' lies in the 'inherent power of a court to regulate actions pending before it.'") (quoting Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1360 (3d ed. & Supp. 2010)).

Generally, a court may stay or dismiss a later-filed action under the doctrine if two conditions are met: (1) there exists an identity of issues between the two actions and (2) the controlling issues in the later-filed action will be determined in the earlier-filed action. 5C Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1360 (3d ed. 2004). The parties in the two suits need not be identical; they need only share sufficient congruence of interests. *See Whitten Ranch, Inc. v. Premier Alfalfa, Inc.*, 2009 WL 1844482, at *2 (D. Neb. June 18, 2009) (finding "congruent, if not identical" interests of individual and company owned by him satisfied doctrinal requirement); *Andy Stroud, Inc. v. Brown*, 2009 WL 539863, at *10 (S.D.N.Y. Mar. 4, 2009) (finding sufficient commonality between individual and two companies wholly owned by him).

Setting aside the issue of whether the doctrine might have been applied at some earlier

6

point in this litigation, there is no reason to apply it now. Many of the issues raised in both complaints are the same. (*Compare* Rowayton Compl. ¶¶ 41–52 *with* Mot. to Consol., Ex. A, Kaufman Compl.). And the parties are largely identical. But in light of the removal and consolidation of the Kaufman complaint with this case, there is no longer another pending action, and there is no risk of inconsistent judgments or judicial inefficiency.

Accordingly, the Court will deny the motion to dismiss to the extent it relies on the prior-pending-action doctrine.

### B.      Count 2

The Kaufman parties next contend that Count 2 of the Rowayton complaint should be dismissed for failure to comply with Fed. R. Civ. P. 9(b) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Under Massachusetts law, to prove fraud, a plaintiff must show that a defendant made "1) a false representation of a material fact, 2) with knowledge of its falsity, 3) for the purpose of inducing plaintiff to act thereon and 4) . . . that [the plaintiff] relied upon the representation as true and acted upon it to his detriment." *FranCounsel Grp., LLC v. Dessange Int'l SA*, 980 F. Supp. 2d 1, 6 (D. Mass. 2013). "[F]or any misrepresentation claim, be it for deceit or for negligent misrepresentation: only statements of fact are actionable; statements of opinion cannot give rise to a deceit action." *Cummings v HPG Intern., Inc.*, 244 F.3d 16, 21 (1st Cir. 2001) (citing *McEneaney v. Chestnut Hill Realty Corp.*, 38 Mass. App. Ct. 573 (1995)). "To draw the difficult distinction between a statement of fact and a statement of opinion, Massachusetts courts have looked to the Restatement (Second) of Torts, which provides that a representation is one of opinion 'if it expresses only (a) the belief of the maker, without certainty, as to the existence of fact; or (b) his judgment as to quality, value, authenticity, or other matters of judgment.'" *Id.*

(quoting Restatement (Second) of Torts § 538A (1977)).

Ordinarily, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, under Fed. R. Civ. P. 9(b), a plaintiff must "state with particularity the circumstances constituting fraud." Under that heightened pleading requirement, a complaint must state the time, place, and content of the alleged false or fraudulent representation to state a claim for fraud. *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 190–91 (1st Cir. 2006). In the case of multiple defendants, that standard requires specific allegations as to what was falsely represented by each defendant. *See Taylor v. Moskow,* 2014 WL 2573990, at *5 (D. Mass. June 6, 2014).

Here, the Rowayton complaint alleges as follows:

> Prior to executing the Engagement Letter, John McCarthy and Seth Kaufman specifically represented that they had the knowledge, expertise, contacts and ability to perform the services necessary to perform under the terms of the Engagement Letter in order to attract investors to fund the proposed business opportunity.

(Rowayton Compl. ¶ 18). In the fraud count itself, the complaint repeats those claims. (*See* Rowayton Compl. ¶ 49 ("Defendants, individually and collectively, knowingly misrepresented to Plaintiffs that one or more of Defendants had the experience, expertise, knowledge and ability to seek out and identify qualified sources of financing for the acquisition that was the subject of the Engagement Letter.")). The Kaufman parties contend that those allegations are insufficient to plead a false representation of material fact—either because the alleged misstatements are inactionable statements of opinion or, in the alternative, because the complaint lacks the necessary particularity under Rule 9(b). (*See* Mot. to Dismiss at 7–8).

The fraud claim here is insufficient on both levels. To begin, the alleged representations that the Kaufman parties could perform under the Engagement Letter are mere commercial

puffery—that is, an affirmation that the Kaufman parties had the capability to perform under the contract. *See Rick v. Profit Management Assoc., Inc.*, 241 F. Supp. 3d 215, 224 (D. Mass. 2017) (dismissing misrepresentation claim based on a statement that defendant "would conduct a 'promotional sale' that would get [plaintiff's company] out of its financial troubles," which the court held was mere "commercial puffing") (alterations omitted).  There is no allegation as to any specific false statement of fact, such as an inflated academic credential or a misrepresentation as to the number of deals actually consummated by the principals. Accordingly, the alleged representations are similar to "judgment[s] as to quality, value, [or] authenticity," not clear representations of material facts.  *See Cummings*, 244 F.3d at 21 (quoting Restatement (Second) of Torts § 538A (1977)).  Put another way, the alleged misstatements are more similar to non-verifiable "touting [of] superlative quality" than concrete "statements [] susceptible [to] actual knowledge." *See id.*

Furthermore, the allegations are not sufficiently particular under Rule 9(b).  The Rowayton complaint does not include the time and place of the alleged misstatements, nor does it identify which of the defendants actually said what.  Thus, each defendant has not been put on notice as to what he is alleged to have falsely stated. *See Rick*, 241 F. Supp. 3d at 224 (finding that "the complaint fail[ed] to give the specifics of who made the statement, or where or when it was made . . . [as well as] delineat[ing] the role of each defendant in connection with the alleged fraudulent misrepresentations"); *Taylor,* 2014 WL 2573990, at *5 (dismissing complaint for misrepresentation where allegations were "vague as to which of the defendants made the purportedly misleading statements"); *Beram v. Ceaco, Inc.,* 219 F. Supp. 3d 274, 281–82, (D. Mass. 2016) (complaint for fraudulent misrepresentation dismissed where "[t]he complaint does not state what fraudulent misrepresentations were made, when, where, or by whom.").

9

Rowayton's arguments to the contrary are unavailing. First, it contends that McCarthy misrepresented himself as a licensed broker-dealer, and that "[t]his alone is a fraud committed upon Plaintiffs." (Opp. to Mot. to Dismiss at 9). Such a misrepresentation could well be actionable. But that allegation is completely absent from the complaint, and it cannot be raised for the first time in an opposition to a motion to dismiss. Second, Rowayton argues that the alleged non-performance under the contract is evidence of fraud. (*Id.*). But that argument simply sidesteps the requirements of Rule 9(b)—indeed, the rule would be meaningless if pleading breach of contract were also sufficient to plead fraud.

Accordingly, Count 2 of the Rowayton complaint will be dismissed.

**C.     Count 3**

Finally, the Kaufman parties move to dismiss Count 3 of Rowayton's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). They contend that this count should be dismissed because neither individual is a party to the contract, the complaint fails to allege a breach of contract, and any claim for damages is precluded by the contract.

First, the Kaufman parties contend that Count 3 should be dismissed against Seth Kaufman and McCarthy, as neither individual is a party to the contract. (*See* Rowayton Compl. Ex. A). Because the only defendant party to the contract is Kaufman & Co., the only way they can be held liable for its breach is on a theory of piercing the corporate veil. "In 'rare particular situations to prevent gross inequity,' disregard of separate corporate entities may be warranted, i.e., it is permissible to pierce the corporate veil." *Evans v. Multicon Const. Corp.*, 30 Mass. App. Ct. 728, 732 (1991) (quoting *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 620 (1968). Whether such veil-piercing is appropriate requires consideration of twelve factors: "(1) common ownership; (2) pervasive control; (3) confused intermingling of business

activity assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; (12) use of the corporation in promoting fraud." *Id.* at 733 (citing *Pepsi–Cola Metropolitan Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 14–16 (1st Cir. 1985)). In Massachusetts, LLCs are treated the same as corporations for purposes of ensuring "meaningful remedies for injuries and to avoid injustice." *Middlesex Retirement System, LLC v. Board of Assessors of Billerica*, 453 Mass. 495, 504 (2009).

The allegations of the complaint are clearly insufficient to allege liability on a theory of piercing the corporate veil. Read generously, the complaint at most alleges facts concerning only two of the twelve factors: pervasive control and use of the corporate form to promote fraud. (*id.* ¶¶ 15-18, 47–49). As noted, the complaint fails to plead a claim for fraud under Massachusetts law.[2] The only relevant allegation, therefore, is that Seth Kaufman and McCarthy exhibited pervasive control of Kaufman & Co., LLC.[3] But that alone is not enough. If it were, the owners of small or closely held businesses would be denied the benefits of the corporate form simply because they controlled their own businesses. Accordingly, Count 3 will be dismissed as to Seth Kaufman and McCarthy. *Cf. Michnovez v. Blair, LLC*, 795 F. Supp. 2d 177, 189 (D. N.H. 2011) (dismissing similar theory of "alter-ego liability" under California law at motion to

---

[2] The Rowayton parties address several additional factors in their opposition briefing and include an affidavit regarding some of these points. Again, however, those allegations are completely absent from the complaint.

[3] The complaint does not even allege that theory with any specificity. However, drawing inferences in favor of the Rowayton parties, the complaint vaguely alleges that both John McCarthy and Seth Kaufman have significant roles at Kaufman and Co., LLC.

dismiss stage for, among other reasons, lacking necessary factual allegations in complaint).

Next, the Kaufman parties contend that Count 3 should be dismissed for failing to allege a breach of contract. They argue that the only factual allegation giving rise to that claim was the use of Stonehenge, a third party, for financing the transaction. (Mot. to Dismiss at 11 (citing Rowayton Compl. ¶¶ 29–30, 52)). That argument, however, mischaracterizes the allegations of the complaint. It alleges that the Kaufman parties failed to make efforts to identify sources of financing and performed incompetently when they did. (*See* Rowayton Compl. ¶ 24, 27, 28). If proved, those allegations are sufficient to support a claim for breach of contract. (*See, e.g.,* "Engagement Letter," Compl. Ex. A (stating that Kaufman & Co. would "[a]ssist in identifying and evaluating certain equity investors and lenders")).

Finally, the Kaufman parties contend that any damages for their alleged breach of contract are barred by the indemnification provision within that contract. In effect, they respond to an allegation of breach of contract by relying on another provision of that same contract. But it is well-settled that under Massachusetts law, "[a] material breach of contract by one party excuses the other party from performance as matter of law." *Verderber v. Perry*, 181 F.3d 81 (1st Cir. 1999) (citing *Ward v. American Mut. Liab. Ins. Co.*, 15 Mass. App. Ct. 98, 100 (1983)) (additional citations omitted). If Kaufman & Co. materially breached the contract, presumably Rowayton is not required to pay their fee or provide indemnification.

### III.   Conclusion

For the foregoing reasons, the motion to dismiss is GRANTED as to Count 2 and the claims against Seth Kaufman and John McCarthy in Count 3, and otherwise DENIED.

**So Ordered.**

Dated:  July 28, 2020

/s/ F. Dennis Saylor IV  
F. Dennis Saylor IV  
Chief Judge, United States District Court